Entered
DEC 1 2 2011

**NOT FOR PUBLICATION**

FILED
DEC 1 2 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk
BYI

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>FERNANDO G. LLAMAS,<br><br>　　　　　　　　　　Debtor.<br>_____<br><br>DAVID L. HAHN,<br>CHAPTER 7 TRUSTEE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>EDNA LEONG,<br><br>　　　　　　　　　　Defendant.<br>_____ | Case No. 2:10-bk-17144-PC<br><br>Adversary No. 2:10-ap-01991-PC<br><br>Chapter 7<br><br>**MEMORANDUM DECISION**<br><br>Date:　October 7, 2011<br>Time:　9:30 a.m.<br>Place:　United States Bankruptcy Court<br>　　　　Courtroom # 1539<br>　　　　255 East Temple Street<br>　　　　Los Angeles, CA 90012 |

Before the court are the cross-motions for summary judgment filed by Plaintiff, David L.

Hahn, Chapter 7 Trustee ("Hahn") and Defendant, Edna Leong ("Leong") in the above

referenced adversary proceeding.  Leong seeks a summary judgment dismissing all remaining

claims set forth in Trustee's First Amended Complaint Against Edna Leong for: (1) Avoidance

of Actual Intent Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A); (2) Avoidance of

Constructive Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(B); (3) Avoidance of Actual

Intent Fraudulent Transfer Under 11 U.S.C. § 544(b) and California Civil Code §§ 3439 et seq.;

(4) Avoidance of Constructive Fraudulent Transfer Under 11 U.S.C. § 544(b) and California

Civil Code §§ 3439 et seq.; (5) Avoidance of Preferential Transfer under 11 U.S.C. § 547; (6)

Recovery of Transfer Per § 550; (7) Injunction Preventing Further Transfer or Encumbrance of

Property; (8) for Declaration That the 100% Interest in the Property is Property of the Bankruptcy

1    Estate ("First Amended Complaint").[1]  Hahn seeks a summary judgment on the Second, Fourth

2    and Sixth Claims for Relief in his First Amended Complaint.  The court, having considered the

3    pleadings, evidentiary record,[2] and arguments of counsel, makes the following findings of fact

4    and conclusions of law pursuant to F.R.Civ.P. 52(a)(1),[3] as incorporated into FRBP 7052

5    applied to adversary proceedings in bankruptcy cases.

6                                    I.  STATEMENT OF FACTS

7            Debtor and Leong were married in Los Angeles, California on February 5, 1989.  They

8    acquired title to certain real property located at 1820 North Fairview Drive, Burbank, California,

9    91505 (the "Family Residence") as "Fernando Llamas and Edna Leong, husband and wife, as

10   community property" by Grant Deed recorded on February 26, 1993.[4]  On August 12, 1997, the

11   debtor filed his first petition for bankruptcy under chapter 7 of the Code ("Prior Bankruptcy

12

13

14   _____

15   [1] The court dismissed on the merits Hahn's Fifth, Seventh and Eighth Claims for Relief by Order
     Granting, in Part, and Denying, in Part, Defendant's Motion to Dismiss Adversary Proceeding
16   entered on December 22, 2010.

17   [2] The court (1) overrules Hahn's objections to Leong's declaration; (2) overrules Hahn's
     objections to the debtor's declaration; (3) sustains Hahn's objections to the declaration of Seaton
18   M. Woodley, III; and (4) sustains Hahn's objections to the admissibility of Exs. 4, 5 and 7 to
19   Leong's motion for summary judgment for the truth of the contents of each exhibit.

20   [3] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
     Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse
21   Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
22   references are to the Federal Rules of Bankruptcy Procedure ("FRBP."), which make applicable
     certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local
23   Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California
24   ("LBR").

25   [4] Request for Judicial Notice in Support of Plaintiff Trustee's Motion for Summary Judgment on
     Causes of Action 2, 4, and 6 on Trustee's First Amended Complaint or in the Alternative,
26   Summary Adjudication of Claims, Issues and Defenses Against Edna Leong ("Hahn's RJN") Ex.
     12.

27                                        - 2 -

1    Case").[5]

2       On December 1, 2009 at 11:24 a.m., debtor filed a verified complaint for divorce in the

3 Superior Court of Guam seeking the dissolution of his marriage to Leong. Debtor stated in his

4 complaint that debtor and Leong had separated as husband and wife on November 6, 2009. Prior

5 to filing the complaint, debtor stayed in Guam for 7 days – the requisite amount of time required

6 by Guam law to establish residency to file for divorce in Guam. Leong did not appear before the

7 court in Guam. Instead, Leong signed and filed with the Guam court a document entitled

8 "Appearance; Waiver of Notice; and Consent" ("Consent") submitting herself to the jurisdiction

9 of the Guam court for purposes of a divorce from the debtor. Leong's Consent stated, however,

10 that the divorce judgment would be effective only if it contained the following language:

11 "FERNANDO LLAMAS will convey his interest in the Burbank California residence to EDNA

12 LEONG within 30 days of the divorce."[6]  On the same day at 11:26 a.m.,  a Final Judgment of

13 Divorce was entered by the Superior Court of Guam. The judgment was entered two minutes

14 after the debtor's filing of the complaint for divorce. Pursuant to the judgment, the court ordered

15 the debtor to convey his interest in the Family Residence to Leong within thirty days of the

16 granting of the divorce. On January 5, 2010, a Quitclaim Deed transferring the debtor's interest

17

18    [5] On August 12, 1997, Fernando G. Llamas filed a voluntary petition under chapter 7 in Case

19 No. 97-40899, In re Fernando G. Llamas, Debtor, in the United States Bankruptcy Court, Central
District of California, Los Angeles Division. Debtor disclosed the Family Residence as his street

20 address in the petition. Debtor listed the Family Residence in Schedule A disclosing under
penalty of perjury that he owned a "100%" interest in the property. Debtor valued the Family

21 Residence in Schedule A at $200,000, disclosed in Schedule D that the Family Residence was
subject to lien securing a $190,000 debt to Wells Fargo Bank, and claimed an exemption in the

22 Family Residence in Schedule C of $10,000 pursuant to Cal. Code Civ. P. §703.140(b)(5).

23 Leong was not identified as the debtor's spouse in Schedule I nor was her interest in the Family
Residence disclosed in the petition, schedules and statements filed in the case. A Report of

24 Trustee in Chapter 7 No Asset Case was filed on September 24, 1997. Debtor received a

25 discharge on November 25, 1997, and the case was closed on December 3, 1997. Hahn's RJN
Ex. 13.

26

27    [6] See Hahn's RJN Ex. 17.

- 3 -

1 | in the Family Residence to Leong was recorded with the Los Angeles County Recorder's office.

2 |     On February 26, 2010, the debtor filed his second voluntary chapter 7 petition

3 | commencing the underlying bankruptcy case. Hahn was appointed as trustee. Hahn commenced

4 | this adversary proceeding against Leong on June 3, 2010, and filed his First Amended Complaint

5 | on October 1, 2010. Hahn's remaining causes of action are predicated upon a fraudulent transfer

6 | theory of recovery. Specifically, Hahn claims that the debtor's transfer of his interest in the

7 | Family Residence to Leong is subject to avoidance under either § 548(a)(1)(A) or § 544(b) as

8 | having been made by the debtor with the actual intent to hinder, delay or defraud a creditor.[7]

9 | Alternatively, Hahn claims that the debtor's transfer of his interest in the Family Residence is

10 | subject to avoidance as constructively fraudulent under either § 548(a)(1)(B) or § 544(b).[8]

11 |     On April 26, 2011, Leong moved for a summary judgment against Hahn on his remaining

12 | causes of action. On July 26, 2011, Hahn moved for a summary judgment on his second, fourth

13 | and sixth claims for relief. On August 16, 2011, Hahn filed opposition to Leong's motion for

14 | summary judgment, and Leong filed opposition to Hahn's motion for summary judgment. On

15 | August 23, 2011, Hahn filed his reply to Leong's opposition and Leong filed her reply to Hahn's

16 | opposition. After a hearing on October 7, 2011, the matter was taken under submission.

17 | II. DISCUSSION

18 |     This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

19 | 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H)

20 | and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

21 | A. <u>Summary Judgment</u>.

22 |     Rule 56(a) authorizes a party to "move for summary judgment, identifying each claim or

23 | defense – or the part of each claim or defense – on which summary judgment is sought."

24 | _____

25 | [7] First Amended Compl. 7:19-21; 10:16-18 (First Claim for Relief and Third Claim for Relief, respectively).

26 |

27 | [8] Id. 9:22-24; 11:3-5 (Second Claim for Relief and Fourth Claim for Relief, respectively).

- 4 -

1    F.R.Civ.P. 56(a). Summary judgment must be granted "if the movant shows that there is no

2    genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

3    Id. In determining whether a genuine factual issue exists, "a trial judge must bear in mind the

4    actual quantum and quality of proof necessary to support liability . . . ." Anderson v. Liberty

5    Lobby, Inc., 477 U.S. 242, 254 (1986). "[T]he judge's function is not himself to weigh the

6    evidence and determine the truth of the matter but to determine whether there is a genuine issue

7    for trial . . . . If the evidence is merely colorable, or is not significantly probative, . . . summary

8    judgment may be granted. Id. at 249–250. However, the court's function on a motion for

9    summary judgment is "issue-finding, not issue-resolution." United States v. One Tintoretto

10   Painting Entitled "The Holy Catholic Family With Saint Catherine and Honored Donor, 691 F.2d

11   603, 606 (2d Cir. 1982). Rule 56 does not permit "trial on affidavits. Credibility determinations,

12   the weighing of the evidence, and the drawing of legitimate inferences from the facts are [fact

13   finder] functions . . . ." Anderson, 477 U.S. at 255.

14         Rule 56(c), which identifies the procedures the court and parties must follow in

15   conjunction with motions for summary judgment, states:

16         (1) **Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely
           disputed must support the assertion by:

17

18              (A) citing to particular parts of materials in the record, including depositions,
                documents, electronically stored information, affidavits or declarations,
                stipulations (including those made for purposes of the motion only), admissions,
19              interrogatory answers, or other materials; or

20              (B) showing that the materials cited do not establish the absence or presence of a
                genuine dispute, or that an adverse party cannot produce admissible evidence to
21              support the fact.

22         (2) **Objection That a Fact Is Not Supported by Admissible Evidence**. A party may
           object that the material cited to support or dispute a fact cannot be presented in a form
23         that would be admissible in evidence.

24         (3) **Materials Not Cited**. The court need consider only the cited materials, but it may
           consider other materials in the record.

25
           (4) **Affidavits or Declarations**. An affidavit or declaration used to support or oppose a
26         motion must be made on personal knowledge, set out facts that would be admissible in
           evidence, and show that the affiant or declarant is competent to testify on the matters

27
                                              - 5 -

1    stated.

2    F.R.Civ.P. 56(c)   The court may grant summary judgment "[i]f a party fails to properly support

3    an assertion of fact or fails to properly address another party's assertion of fact as required by

4    Rule 56(c)." See F.R.Civ.P. 56(e)(3).

5          When the nonmoving party has the burden of proof at trial, the moving party need only

6    point out "that there is an absence of evidence to support the nonmoving party's case." Celotex

7    Corp. v. Catrett, 477 U.S. 317, 325 (1986); see Fairbank v. Wunderman Cato Johnson, 212 F.3d

8    528, 532 (9th Cir. 2000) (stating that the Celotex showing can be made by "pointing out through

9    argument-the absence of evidence to support plaintiff's claim").  "Once the moving party carries

10   its initial burden, the adverse party 'may not rest upon the mere allegations or denials of the

11   adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth

12   specific facts showing that there is a genuine issue for trial.' " Devereaux v. Abbey, 263 F.3d

13   1070, 1076 (9th Cir. 2001) (quoting former F.R.Civ.P. 56(e)); see Celotex, 477 U.S. at 323-24.

14   If the nonmoving party fails to establish a triable issue "on an essential element of her case with

15   respect to which she has the burden of proof," the moving party is entitled to judgment as a

16   matter of law. Id. at 323.

17   B. Contentions of the Parties.

18         Hahn seeks a summary judgment on his second, fourth, and sixth causes of action,

19   arguing that the summary judgment evidence establishes that the debtor's transfer of his

20   community interest in the Family Residence is avoidable under § 544(b) and 548(a)(1(B), and

21   recoverable under § 550, as constructively fraudulent to his creditors.[9]  Leong disagrees, arguing

22   that Hahn's motion must be denied because there are genuine issues of material fact with regard

23   to: (1) whether the debtor was insolvent on the date of the transfer; and (ii) whether the debtor

24

25   [9] Notice of Motion and Motion for Summary Judgment on Causes of Action 2, 4, and 6 on

26   Trustee's First Amended Complaint or in the Alternative, Summary Adjudication of Claims,
     Issues and Defenses Against Edna Leong ("Hahn MSJ") 2:11-18.

27
                                                     - 6 -

1   received less than reasonably equivalent value for the transfer.[10]

2        Leong, on the other hand, contends that she is entitled to a summary judgment dismissing

3   all remaining claims in Hahn's First Amended Complaint.  Leong asserts that: (1) Hahn's First

4   Amended Complaint "contains no particularized allegations of fraud;"[11] (2) Hahn "must prove

5   that reasonably equivalent value was not given by [Leong] for the Transfer" to succeed on any of

6   his remaining claims;[12] and (3) "in the absence of a particularized allegation of fraud, reasonably

7   equivalent value was conclusively given for the Transfer pursuant to the Divorce Judgment."[13]

8   Leong points to the Ninth Circuit's decision in <u>Batlan v. Bledsoe (In re Bledsoe)</u>, 569 F.3d 1106

9   (9th Cir. 2009), arguing that she is entitled to a summary judgment dismissing Hahn's fraudulent

10   transfer claims as a matter of law.[14]  Hahn disagrees, asserting that <u>Bledsoe</u> requires "a regularly

11   conducted, contested proceeding" and has no application to the facts of this case.[15]

12   C.  <u>Leong is Entitled to Summary Judgment Dismissing Hahn's Actual Intent Fraudulent</u>

13   <u>Transfer Claims Under § 548(a)(1)(A) and § 544(b).</u>

14        By his First Claim for Relief, Hahn seeks to avoid the transfer of the debtor's interest in

15   the Family Residence under § 548(a)(1)(A) as having been made with the actual intent to hinder,

16   delay or defraud a creditor.  Section 548(a)(1)(A) of the Code states:

17          The trustee may avoid any transfer (including any transfer to or for the benefit of an
       insider under an employment contract) of an interest of the debtor in property, or any

18

19   [10] Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Leong Opp'n") 2:28 –

20   3:2.

21   [11] Defendant's Notice of Motion and Motion for Summary Judgment or in the Alternative,
Summary Adjudication of the Issues ("Leong MSJ") 7:7-8.

22

23   [12] <u>Id.</u> 7:18-19.

24   [13] <u>Id.</u> 7:19-21.

25   [14] <u>Id.</u> 19:27-20:21.

26   [15] Trustee's Opposition to Defendant's Motion for Summary Judgment or In the Alternative,
Summary Adjudication of the Issues ("Hahn Opp'n") 3:27-28.

27

obligation incurred by the debtor, that was made or incurred on or within 2 years before
the date of the filing of the petition, if the debtor voluntarily or involuntarily –

(A) made such transfer or incurred such obligation with the actual intent to hinder,
delay, or defraud any entity to which the debtor was or became, on or after the
date that such transfer was made or such obligation was incurred, indebted; . . . .

11 U.S.C. § 548(a)(1)(A).  Alternatively, Hahn seeks in his Third Claim for Relief to avoid the

transfer through § 544(b) as actually fraudulent under state law.

Section 544(b)(1) states, in pertinent part:

[T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is
voidable under applicable law by a creditor holding an unsecured claim that is allowable
under section 502 . . . or that is not allowable only under section 502(e) . . . .

11 U.S.C. § 544(b)(1).  In other words, a trustee may avoid transfers or obligations that could

have been avoided by an unsecured creditor under applicable non-bankruptcy law had the

bankruptcy case not been filed, provided such a creditor actually exists.  Hahn seeks to avoid the

debtor's transfer of his community interest in the Family Residence under § 544(b) as having

been made by the debtor with the actual intent to hinder, delay or defraud a creditor in violation

of California's Uniform Fraudulent Transfer Act ("UFTA"), which states:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
whether the creditor's claim arose before or after the transfer was made or the obligation
was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or
obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for
which the remaining assets of the debtor were unreasonably small in
relation to the business or transaction.

(B) Intended to incur, or believed or reasonably should have believed that
he or she would incur, debts beyond his or her ability to pay as they
became due.

Cal. Civ. Code § 3439.04(a).  To prevail under California's UFTA § 3439.04(a)(1), Hahn must

establish by a preponderance of the evidence that the debtor transferred his interest in the Family

Residence to Leong with the actual intent to hinder, delay or defraud a creditor.  See Wolkowitz

- 8 -

1    v. Beverly (In re Beverly), 374 B.R. 221, 235 (9th Cir. BAP 2007) ("Whether there is actual

2    intent to hinder, delay, or defraud under UFTA is a question of fact to be determined by a

3    preponderance of evidence."). Because a debtor rarely admits to such a transfer, the evidence of

4    intent "must of necessity consist of inferences drawn from the circumstances surrounding the

5    transaction and the relationship and interests of the parties." Neumeyer v. Crown Funding Corp.,

6    56 Cal.App.3d 178, 183 (1976); see Beverly, 374 B.R. at 235 ("Since direct evidence of intent to

7    hinder, delay or defraud is uncommon, the determination typically is made inferentially from

8    circumstances consistent with the requisite intent."). The UFTA identifies 11 non-exclusive

9    factors, or "badges of fraud," that may be applied by a court to divine fraudulent intent:

10        1.    Whether the transfer or obligation was to an insider.

11        2.    Whether the debtor retained possession or control of the property after the
              transfer.

12
          3.    Whether the transfer or obligation was disclosed or concealed.
13
          4.    Whether the debtor was sued or threatened with suit before the transfer was made
14            or obligation incurred.

15        5.    Whether the transfer was of substantially all of the debtor's assets.

16        6.    Whether the debtor absconded.

17        7.    Whether the debtor removed or concealed assets.

18        8.    Whether the value of the consideration received by the debtor was reasonably
              equivalent to the value of the asset transferred or obligation incurred.
19
          9.    Whether the debtor was insolvent or became insolvent shortly after the transfer
20            was made or obligation incurred.

21        10.   Whether the transfer occurred shortly before or shortly after a substantial debt was
              incurred.
22
          11.   Whether the debtor transferred essential assets of the business to a lienholder who
23            then transferred the assets to an insider of the debtor.

24    Cal. Civ. Code § 3439.04(b). The UFTA factors are intended "to provide guidance to the trial

25    court, not compel a finding one way or another." Filip v. Bucurenciu, 129 Cal.App.4th 825, 834

26    (2005). As the court observed in Beverly:

27                                                    - 9 -

1    The UFTA list of "badges of fraud" provides neither a counting rule nor a mathematical
     formula. No minimum number of factors tips the scales toward actual intent. A trier of
2    fact is entitled to find actual intent based on the evidence in the case, even if no "badges
     of fraud" are present. Conversely, specific evidence may negate an inference of fraud
3    notwithstanding the presence of a number of "badges of fraud."

4    374 B.R. at 236.   Indeed, the existence of even several "badges of fraud" may be insufficient to

5    create an inference of fraudulent intent sufficient to defeat summary judgment. Annod Corp. v.

6    Hamilton & Samuels, 100 Cal.App.4th 1286, 1298 (2002).

7        The debtor's state of mind "is the focus in the inquiry into actual intent." Plotkin v.

8    Pomona Valley Imports, Inc. (In re Cohen), 199 B.R. 709, 716 (9th Cir. BAP 1996); see Beverly,

9    374 B.R. at 235 ("The focus is on the intent of the transferor."). "[T]he adequacy or equivalence

10   of consideration provided for the actually fraudulent transfer is not material to the question of

11   whether the transfer is actually fraudulent." Cohen, 199 B.R. at 717; see Beverly, 374 B.R. at

12   235 ("Any of the three – intent to hinder, intent to delay, or intent to defraud – qualifies the

13   transfer for UFTA avoidance . . . ."). A transferee may be entitled to keep the transfer if she can

14   show that she is "a person who took in good faith and for a reasonably equivalent value." Cal.

15   Civ. Code § 3439.08 (emphasis added). "Conversely, the transferor's intent is immaterial to the

16   constructively fraudulent transfer in which the issue is equivalence of the consideration coupled

17   with either insolvency, or inadequacy of remaining capital, or inability to pay debts as they

18   mature." Cohen, 199 B.R. at 717.

19       Leong argues that Hahn has failed to state any "particularized allegations of fraud" in his

20   First Amended Complaint[16] and that, to the extent Hahn attacks the transfer made pursuant to the

21   Divorce Judgment as actually fraudulent, there is no evidence to establish that the debtor

22   transferred his interest in the Family Residence to Leong with the actual intent to hinder, delay,

23   or defraud any creditor of the debtor.[17] Leong's motion placed the burden on Hahn to produce

24   significantly probative evidence of specific facts showing there is a genuine issue of material fact

25   _____

26   [16] Leong MSJ 7:7-17.
     [17] Id. 18:15-24.

27

- 10 -

1    requiring a trial on his First and Third Claims for Relief.  See T.W. Elec. Serv., Inc. v. Pac. Elec.

2    Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Hahn has no direct evidence that the

3    debtor transferred his interest in the Family Residence to Leong in connection with their divorce

4    with the actual intent to hinder, delay or defraud a creditor.  The evidence that Leong acted

5    without fraudulent intent is uncontradicted by direct evidence.[18]  Instead, Hahn points to the

6    existence of four "badges of fraud" to support his position that the debtor had such an intent at

7    the time his interest in the Family Residence was transferred to Leong, to wit:

8          (1)    As the debtor's spouse, Leong was an insider at the time of the transfer;

9          (2)    The transfer was substantially all of the debtor's non-exempt assets;

10         (3)    Reasonably equivalent value was not given in exchange for the transfer; and

11         (4)    The debtor was insolvent or rendered insolvent by the transfer.[19]

12   These four badges of fraud, according to Hahn, raise triable issues of fact regarding the debtor's

13   actual intent to hinder, delay or defraud a creditor.

14         "[T]he presence of one or more [badges of fraud] does not create a presumption of fraud,

15   but 'is merely evidence from which an inference of fraudulent intent may be drawn.' " Wyzard v.

16   Goller, 23 Cal.App.4th 1183, 1190 (1994) (citation omitted).  Few of § 3439.04(b)'s 11 non-

17   exclusive factors arguably apply to the facts of this case.  It is undisputed that the debtor made

18   the subject transfer to Leong who was a former spouse at the time of the transfer.

19         "Insider," as defined in § 101(31), specifically includes the spouse of the debtor but not a

20   former spouse of the debtor.  Miller v. Schuman (In re Schuman), 81 B.R. 583, 585 (9th Cir.

21   BAP 1987) ("A spouse of the debtor is a relative . . . because the definition includes individuals

22   'related by affinity.'  A former spouse, however, is not related by affinity; thus, 'a former spouse

23   will not be considered a relative.' ").  However, the definition of an "insider" under § 101(31) is

24   non-exclusive.  Barnhill v. Vaudreuil (In re Busconi), 177 B.R. 153, 158 (Bankr. D. Mass. 1995)

25   

26   [18] Id. 22:6-19.
    [19] Hahn Opp'n 20:23-26.

27

1    ("The word 'includes' is 'not limiting.' "). "The tests developed by the courts in determining

2    who is an insider focus on the closeness of the parties and the degree to which the transferee is

3    able to exert control or influence over the debtor." Schuman, 81 B.R. at 586. Hahn maintains

4    that Leong was an insider because she continued to maintain a sufficiently close relationship with

5    the debtor after the divorce to render her an insider. In support of his contention, Hahn points to

6    evidence that Leong and the debtor filed joint tax returns for 2007, 2008 and 2009, and that the

7    debtor was still an insured dependent of Leong's for health insurance purposes as recently as

8    January 1, 2010.[20] Hahn also presented evidence that, at the time of the subject transfer, the

9    debtor was insolvent.[21]

10          Leong's disputed insider status coupled with evidence of insolvency at the time of the

11    transfer does not raise a triable issue of fact. Hahn's summary judgment evidence on the issue of

12    whether Leong exerted sufficient control or influence over the debtor after the divorce to render

13    the transfer actually fraudulent is not significantly probative. Even assuming Leong qualified as

14    an insider, there is no evidence of any other "badge of fraud." [T]he adequacy or equivalence of

15    consideration provided for the actually fraudulent transfer is not material to the question of

16    whether the transfer is actually fraudulent." Cohen, 199 B.R. at 717. Furthermore, there is no

17    evidence that the debtor was being sued or threatened with suit by any creditor prior to the

18    subject transfer or that Leong knew that one or more creditors were not being paid at the time she

19    received the subject transfer. Debtor did not retain possession or control of the property after the

20    subject transfer nor did the debtor abscond, remove or conceal assets. The subject transfer was

21    disclosed, not concealed. Hahn has not established a triable issue of fact on his First and Third

22    Claims for Relief.

23

24

25    ───────────────

26    [20] Id. 22:13-22.
      [21] See Declaration of Donald Fife ¶ 10.

27

D. Hahn is Entitled to Summary Judgment Against Leong on the Constructive Fraudulent Transfer Claims Under § 548(a)(1)(B) and § 544.

By his Second Claim for Relief, Hahn seeks to avoid the transfer of the debtor's interest in the Family Residence under § 548(a)(1)(B) as constructively fraudulent to creditors. Section 548(a)(1)(B) of the Code states:

> The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> >
> > (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> >
> > (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> >
> > (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). Alternatively, Hahn seeks in his Fourth Claim for Relief to avoid the transfer through § 544(b) as constructively fraudulent under UFTA.

To establish a prima facie case for avoidance of a transfer under § 548(a)(1)(B), the trustee must show that: (1) there was a transfer of an interest in debtor's property; (2) that debtor was insolvent at the time of the transfer; (3) that the transfer occurred within two years of the filing of debtor's bankruptcy petition; and (4) that debtor received less than a reasonably equivalent value in exchange for the transfer. Decker v. Advantage Fund Ltd., 362 F.3d 593, 596 (9th Cir. 2004). The elements of a prima facie case for avoidance of a constructively fraudulent

- 13 -

1  transfer are similar under UFTA.[22] The analogous state statutes and Bankruptcy Code provisions

2  may be interpreted contemporaneously. See In re United Energy Corp., 944 F.2d 589, 594 (9th

3  Cir. 1991); In re Maddalena, 176 B.R. 551, 553 (Bankr. C.D. Cal. 1995).

4      1. Debtor Transferred an Interest in Property To Leong

5      It is undisputed that the debtor transferred an interest in the Family Residence to Leong

6  by Quitclaim Deed on January 5, 2010. The critical issue is whether or not the debtor had a

7  community interest in the Family Residence at the time of the transfer. Hahn asserts that the

8  debtor and Leong acquired title to the Family Residence following their marriage in March 27,

9  1987, and took title to the Family Residence "as husband and wife as community property" as

10  expressly stated in the Grant Deed dated February 12, 1993.[23] Hahn argues that the debtor had a

11  community interest in the Family Residence and transferred it to Leong by Quitclaim Deed

12  recorded on January 5, 2010.

13      Leong disputes the fact that debtor had any interest in the Family Residence. Leong

14  contends "[t]here was never any intent by the Defendant or the Debtor to hold the Family Home

15  as community property."[24]  Leong testified that:

16

---

17  [22]  However, § 548(a)(1)(B) and UFTA have different limitations periods. A transfer may be
18  avoided under § 548(a)(1) only if it was "made or incurred on or within 2 years before the date of
   the filing of the petition." 11 U.S.C. § 548(a)(1). The limitation period for avoidance under
19  UFTA is the later of four years after the transfer or one year after the date of reasonable
   discovery. Cal. Civ. Code § 3439.09(a); Monastra v. Konica Business Machines, U.S.A., Inc., 43
20  Cal.App.4th 1628, 1645 (1996). Furthermore, the concept of "reasonably equivalent value" may
   be broader under UFTA than § 548. For example, under both state law and the federal statute,
21  release of a claim may constitute reasonably equivalent value under either UFTA or §
   548(a)(1)(B). See In re United Energy Corp., 944 F.2d 589, 595–98 (9th Cir. 1991). But under
22  California law, the release of a claim that is barred by the statute of limitations may also be
23  deemed reasonably equivalent value. See Cal. Civ. Code § 3439.04; In re Prejean, 994 F.2d 706,
   707–09 (9th Cir. 1993). It is not clear that the result would be the same under § 548.
24

25  [23] Hahn's RJN Ex. 12.

26  [24] Defendant's Statement of Genuine Issues of Fact in Opposition to Plaintiff's Motion for
   Summary Judgment 5:13-20.
27

- 14 -

1    As can be seen from the escrow documents for the purchase of the Residence . . . **Exhibit
     5**, the entire $54,800.00 down payment ... for the Family Home was paid by me; the
2    Debtor paid none of it. Although the grant deed by which we took title to the Residence
     may state that the Family Home was being held as community property as opposed to
3    joint tenancy, no thought was given at the time by the Debtor and me to the wording on
     the grant deed ... . [I]t was orally agreed between the Debtor and me that because I was
4    the source of the Down Payment, the disparity of our ages, and the disparity in our
     earning power, that the Debtor would not be entitled to half of the Family Home if we
5    became separated or divorced.[25]

6    _____

7
     [25] Leong MSJ 21:15-25 (emphasis in original).  Exhibit 5 consists of copies of the several
8    documents, including the following:

9
        1.  An email correspondence from Leong's counsel to Hahn's counsel dated August 27,
10      2010, which states, in pertinent part:  "See attached escrow documents per your request.
        As previously stated, the Debtor contributed none of the $54,800 downpayment for Ms.
11      Leong's residence at which her family resides."

12
        2.  The front page of an escrow statement of Fernando Llamas and Edna Leong from
13      Parliament Escrow Corporation, Escrow No. 23696-A, dated February 26, 1993,
        reflecting a deposit of $54,800 for the purchase of the Family Residence, together with a
14      copy of a post-it note reading: "ATTN WES Deposit $54,800 From Edna";

15
        3.  Receipt No. 040450 from Parliament Escrow dated February 23, 1993, acknowledging
16      receipt from Edna Leong and Fernando Llamas of $34,800;

17      4.  Receipt No. 040449 from Parliament Escrow dated February 23, 1993, acknowledging
        receipt from Edna Leong and Fernando Llamas of $17,000;
18

19      5.  Cashier's Check # 61-168446873 from East-West Federal Bank payable to the order
        of Parliament Escrow Corp. in the amount of $2,000 dated February 19, 1993;
20

21      6.  Cashier's Check # 61-168446861 from East-West Federal Bank payable to the order
        of Parliament Escrow Corp. in the amount of $15,000 dated February 18, 1993;
22
        7.  Cashier's Check # 61-168446851 from East-West Federal Bank payable to the order
23      of Edna Leong in the amount of $10,000 dated February 16, 1993;

24      8.  Cashier's Check No. 4817 from Kaiser Permanente Federal Credit Union payable to
25      the order of Parliament Escrow Corporation in the amount of $24,800 dated February 23,
        1993; and
26
        9.  Statement from Kaiser Permanente Federal Credit Union on an account held in the
27
                                           - 15 -

1    "Except as otherwise provided by statute, all property, real or personal, wherever situated,

2    acquired by a married person during the marriage while domiciled in this state is community

3    property." Cal. Fam. Code § 760. The earnings of either husband and wife acquired during the

4    marriage constitute community property. State Bd. of Equalization v. Woo, 82 Cal.App.4th 481,

5    483 (2000). "If acquired by husband and wife by an instrument in which they are described as

6    husband and wife, the presumption is that the property is the community property of the husband

7    and wife, unless a different intention is expressed in the instrument." Cal. Fam. Code § 803(c).

8    "Thus, there is a general presumption that property acquired during marriage by either spouse

9    other than by gift or inheritance is community property unless traceable to a separate property

10    source." Haines v. Haines (In re Marriage of Haines), 33 Cal.App.4th 277, 289-90 (1995)

11    (citation omitted). That presumption can be rebutted only by credible evidence of an agreement

12    or understanding to the contrary. Tucker v. Tucker (In re Marriage of Tucker), 141 Cal.App.3d

13    128, 132 (1983). "[A]bsent a contrary statute, and unless ownership interests are otherwise

14    established by sufficient proof, record title is usually determinative of characterization." Haines,

15    33 Cal.App.4th at 291.

16         In this case, the Grant Deed dated February 26, 1993, states specifically that the Family

17    Residence was conveyed to "Fernando Llamas and Edna Leong, husband and wife, as community

18    property."[26] Debtor stated under penalty of perjury in his Prior Bankruptcy Case that he owned a

19    _____

20         name of Edna W. Leong for the period of January 1, 1993 to February 28, 1993.

21    Leong MSJ, Ex. 5. Leong further testified that she married the debtor on March 27, 1987. At that

22    time, Leong was 35 and had been working as a nurse for 11 years and the debtor was 22 had been
       employed as a clerk for 4 years. Leong testified that due to the 13 year age difference, there had

23    always been a considerable gap in their income. Leong states she turns 60 next year and is still
       employed as a nurse. Id. 21:6-11.

24

25    [26] Had the Grant Deed specified that debtor and Leong were conveyed the Family Residence as
       "Husband and Wife, as joint tenants," there would be a rebuttable presumption of a joint tenancy.

26    See Hanf v. Summers (In re Summers), 332 F.3d 1240, 1243-44 (9th Cir. 2003) ("There is
       therefore a rebuttable presumption that 'where the deed names the spouses as joint tenants . . . the

27
                                        - 16 -

1  "100% interest" in the Family Residence.[27]  Despite Leong's assertion that she and the debtor

2  orally agreed upon acquisition of the Family Residence that the debtor waived any interest in the

3  Family Residence, "[a] transmutation of real or personal property is not valid unless made in

4  writing by an express declaration that is made, joined in, consented to, or accepted by the spouse

5  whose interest in the property is adversely affected." Cal. Fam. Code § 852(a).  The bank

6  statements and post-it note purportedly showing that the down payment of $54,800.00 came from

7  Leong do not establish that the funds used were actually Leong's separate property.  "[T]he

8  source of the funds used to purchase property does not alter the property's character." Summers,

9  332 F.3d at 1245.  Leong's evidence to rebut the presumption that the Family Residence was the

10  community property of the debtor and Leong is not significantly probative to establish a triable

11  issue of fact.

12      2.  Debtor Was Insolvent At the Time of the Transfer

13      "Insolvent," as defined in § 101(32), means "with reference to an entity other than a

14  partnership and a municipality, financial condition such that the sum of such entity's debts is

15  greater than all of such entity's property, at a fair valuation exclusive of—(i) property transferred,

16  concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii)

17  property that may be exempted from property of the estate under section 522 of this title." 11

18  U.S.C. § 101(32)(A).  The UFTA provides that "[a] debtor is insolvent if, at fair valuations, the

19  sum of the debtor's debts is greater than all of the debtor's assets." Cal. Civ. Code § 3439.02(a).

20      Hahn's summary judgment evidence establishes that the debtor was insolvent before and

21  after the transfer.  Hahn's expert witness, Donald Fife ("Fife"), conducted an analysis of the

22  debtor's financial condition as of January 5, 2010 – the date the Quitclaim Deed was recorded

23

24

25  property was in fact held in joint tenancy . . . .").  This was not done.
   [27] See supra note 4.

26

27                                        - 17 -

and December 1, 2009 – the date of the filing of debtor's divorce.[28]  In conjunction with his

analysis, Fife reviewed the debtor's schedules and statements filed in the above referenced

bankruptcy case, the claims register, and relevant credit card statements and tax returns.[29]  In

Fife's opinion, the debtor was insolvent on both of these dates.[30]  Fife concluded that "the

Debtor's liabilities exceeded his assets, at fair value, by at least $50,000 at December 1, 2009,"[31]

and "the Debtor's liabilities exceeded his assets, at fair value, at January 5, 2010 [immediately

following the Transfer] by at least $58,500."[32]  Furthermore, according to debtor's petition,

schedules, and statement of financial affairs, the debtor had been unemployed for nearly three

years prior to bankruptcy with his only sources of income being unemployment benefits of

$1,720 per month and voluntary support from friends and relatives of $500 per month.[33]

Because Leong has not responded with significantly probative evidence to create a triable

issue of fact regarding the debtor's solvency, the court finds that there is no genuine issue of

material fact as to the debtor's insolvency at the time of the transfer to Leong.

3.  The Transfer Occurred Within Two Years of the Filing of the Debtor's Petition

Nor is there a genuine issue of material fact concerning the timing of the transfer.  The

debtor filed for relief under chapter 7 on February 26, 2010.  On January 5, 2010, a Quitclaim

---

[28] Hahn MSJ 38:9-14. Leong's evidentiary objections to Fife's declaration and report are overruled. Fife's report is based on an analysis of the debtor's bankruptcy petition and business records subpoenaed from creditors by Hahn.  Debtor testified under penalty of perjury that the contents of his bankruptcy petition, schedules and statements were true and correct.  Under F.R. Evid. 703, an expert may rely on hearsay testimony and documentary evidence in forming an opinion if it is the type reasonably relied upon by experts in the field in making such conclusions. See Hirsch v. Lopreato (In re Colonial Realty Co.), 209 B.R. 819, 822 (Bankr. D. Conn. 1997) ("An expert may rely upon facts and data which are inadmissible as long as the expert's reliance upon such materials is reasonable.").

[29] Hahn MSJ Ex. 8, 237-38.

[30] Id. Ex. 8, 233.

[31] Id. 39:20-21.

[32] Id. 39:18-19.

[33] See Hahn RJN, Ex. 18, 101.

1    Deed transferring the debtor's interest in the Family Residence was recorded with the Los

2    Angeles County Recorder's Office.[34]  Thus, the transfer occurred within 2 years of the filing of

3    debtor's petition.

4        4.  Less Than Reasonably Equivalent Value Was Given for the Transfer

5        Both 11 U.S.C. § 548(a)(1)(B) and Cal. Civ.Code § 3439.05 define a constructively

6    fraudulent transfer as a transfer for which the debtor did not receive "reasonably equivalent

7    value."  "Reasonable equivalence" does not require exact equality in value.  In re Food & Fibre

8    Prot., Ltd., 168 B.R. 408, 419 (Bankr. D. Ariz. 1994); see also BFP v. Resolution Trust Corp.,

9    511 U.S. 531, 540 n. 4 (1994) ("Our discussion assumes that the phrase 'reasonably equivalent'

10   means 'approximately equivalent,' or 'roughly equivalent.' ").  Therefore, to determine whether

11   the transfer sought to be avoided by a trustee was constructively fraudulent, the court must

12   determine the value of the property interest transferred by the debtor and the value of property, if

13   any, received for the transfer. The court must then determine whether the latter value is

14   reasonably equivalent to the former.  See Corzin v. Fordu (In re Fordu), 201 F.3d 693, 708 (6th

15   Cir. 1999).

16        a.  Value of the Interest in Property Transferred by the Debtor

17        Hahn's complaint seeks to avoid the debtor's transfer to Leong of his interest in the

18   Family Residence.  According to an authenticated appraisal prepared by Hahn's qualified expert,

19   David S. Hayward, the Family Residence had an "as is" value of $515,000 on December 1,

20   2009.[35]  According to a GMAC Mortgage Account Statement addressed to debtor and Leong

21   dated May 2, 2011, GMAC held a lien against the Family Residence securing a debt with a

22   principal balance of $140,806.63, as of May 2, 2011.[36]  In Schedule D, debtor admitted that the

23

24

_____

25   [34] Id. Ex. 16.

26   [35] Hahn MSJ, 40:23-24; Ex. 10.

     [36] Id. 25:10-15; Ex. 11.

27

1  debt secured by GMAC's lien was $147,117 as of the petition date – February 26, 2010.[37] Hahn

2  contends that, "[e]ven assuming that the debt against the [Family Residence] was as high as

3  $150,000.00 on December 1, 2009, the net equity in the [Family Residence] at the time of the

4  entry of the Divorce Judgment, when considering an 8% cost of sale, was $323,800.00."[38]

5      In response, Leong attacks Hahn's summary judgment evidence, arguing that (a)

6  reasonably equivalent value cannot be determined because Hahn "failed to submit a title report

7  for the Family [Residence] into evidence"; and (b) the declaration of Hahn's real estate broker,

8  William Friedman, and Hahn's Exhibit 6, the property profile for the subject property must be

9  stricken.[39] Leong dismisses the balance of the evidence proffered by Hahn on this issue.  Leong

10  has not responded with evidence to contradict Hayward's valuation of the Family Residence as of

11  December 1, 2009, nor evidence to contradict the amount of debt secured by liens on the property

12  as of December 1, 2009, according to the debtor's Schedule D and Leong's own mortgage

13  statement.  Leong has failed to establish by significantly probative evidence a genuine issue of

14  material fact as to the equity in the Family Residence on the date of divorce.  The summary

15  judgment evidence supports a finding that, at the time of the transfer, the equity in the Family

16  Residence in which the debtor held a community property interest, was $323,800.

17  b. Value of the Interest in Property Received in Exchange for the Transfer

18      In exchange for the transfer to Leong of his community interest in the Family Residence,

19  debtor received a waiver of a claim for future spousal and child support payments from Leong.

20  Hahn argues that such a waiver does not constitute value for purposes of § 548 or Cal. Civ. Code

21  § 3439, citing In re Carbaat, 357 B.R. 553 (Bankr. N.D. Cal. 2006).  In Carbaat, the non-debtor

22  ex-wife sought to have the court consider her waiver of spousal support, among other things, as

23  value that the debtor received in exchange for transfer of property through a marital settlement

---

24

25  [37] Id. 25:16-19; Ex. 18.
   [38] Id. 25:20-22.

26  [39] Leong Opp'n 3:11-25.  Leong's evidentiary objections to the Declaration of William Friedman
   and Exhibit 6 are sustained.

27

- 20 -

1  agreement. The Carbaat court concluded that a waiver of spousal support cannot serve as value in

2  this context, stating:

3  > [T]he definition of value in both 11 U.S.C. § 548(d)(2)(A)[40] and Cal. Civ.Code § 3439.03
   > excludes an unperformed promise to provide future support to the debtor or to another
4  > person. The rationale of these provisions, although not their precise language, precludes
   > treating the Debtor's waiver of future spousal support as value. The rationale behind the
5  > statutory exclusion is that an unperformed promise to provide future support to the debtor
   > does not benefit creditors in a liquidation. In re Lucas Dallas, Inc., 185 B.R. 801, 807 (9th
6  > Cir. BAP 1995) (citing California legislative history); see In re Agric. Research & Tech.
   > Group, Inc., 916 F.2d 528, 540 (9th Cir.1990) (citing comment to Uniform Fraudulent
7  > Transfer Act). Similarly, in a chapter 7 case, the waiver of a debtor's obligation to pay
   > future spousal support from his post-petition income does not create value from a
8  > creditor's perspective.

9  Carbaat, 357 B.R. at 561.[41]

10      In the alternative, Hahn argues that even if the waiver of spousal and child support were

11  to be considered, the value of such waivers would be minimal.  Based on the testimony of

12  Jacqueline Taitano Terlaje ("Terlaje"), a family law practitioner in Guam, Hahn asserts that

13  Leong was employed as a nurse making over $100,000 annually for the period of three years

14  prior to divorce while the debtor was unemployed during the same period.  Hahn further asserts

15  that based on the parties' respective  financial situations, and the fact that the youngest child was

16  16 years old, the only support the Guam court would have ordered was $50 to $100 per month, or

17

18  _____

19  [40] Section 548(d)(2) states in relevant part:

20  > (A) "value" means property, or satisfaction or securing of a present or antecedent debt of
   > the debtor, but does not include an unperformed promise to furnish support to the debtor
21  > or to a relative of the debtor.

22  11 U.S.C. 548(d)(2)(A).

23  [41] Leong contends that a waiver of an obligation to pay child support constitutes "value" for
   purposes of § 548(d)(2)(A), citing Schilling v. Montalvo (In re Montalvo), 333 B.R. 145, 150
24  (Bankr. W.D.Ky. 2005).  Leong MSJ 19:16-20.  The court agrees with Hahn that "[t]he Montalvo
   case does not support the conclusion that a waiver of an obligation to provide child support is
25  value.  It merely stands for the proposition that fulfilling your ongoing obligation to support your
   children through payments to someone else who then buys the food for your kids is not an
26  intentional fraudulent transfer."  Hahn Opp'n 16:23-26.

27

1    $1,200 to $2,400 per year for child support, and zero for spousal support.[42]

2         Because a waiver of the debtor's obligation to pay future child support does not constitute

3    value for purposes of § 548(d)(2)(A) or Cal. Civ. Code § 3439.03, the court need not consider

4    Hahn's alternative argument.  Courts must analyze the issue of reasonably equivalent value from

5    the creditors' perspective because the function of this element is to allow avoidance of those

6    transfers that result in a diminution of a debtor's prepetition assets.  Roosevelt v. Ray (In re

7    Roosevelt), 176 B.R. 200, 206-08 (9th Cir. BAP 1994).  Value under § 548(d)(2) does not

8    include either an unperformed promise to provide future support to the debtor or a dependent of

9    the debtor or a waiver of the debtor's obligation to do so.  Debtor received no value in exchange

10   for the transfer of his community interest in the Family Residence to Leong.  Therefore, the

11   value of the debtor's interest in the Family Residence received by Leong, as the immediate

12   transferee of the transfer, was one-half of $323,800, or $161,900.[43]

13        5.  The Ninth Circuit's Decision in In re Bledsoe Does Not Change The Result.

14        Notwithstanding the foregoing analysis, Leong asserts that she is entitled to a summary

15   judgment dismissing Hahn's fraudulent transfer claims as a matter of law based upon the Ninth

16   Circuit's Bledsoe decision.[44]  Leong argues that the Divorce Judgment between Leong and the

17   _____

18   [42] Hahn MSJ 26:13-27; Terlaje Decl. 7:3-9.  Leong objects to Terlaje's testimony on the grounds
     that she does not specialize in family law and therefore, is not qualified to render an expert
19   opinion.  Leong Opp'n 4:1-2.  Leong's evidentiary objections to the Terlaje Declaration are
     overruled.
20   [43] Leong asserts four affirmative defenses in her answer to Hahn's First Amended Complaint:(1)
21   failure to state a cause of action; (2) lack of subject matter jurisdiction; (3) res judicata and
     collateral estoppel; and (4) setoff under 11 U.S.C. § 553.  By Order Granting, in Part, and
22   Denying, in Part, Defendant's Motion to Dismiss Adversary Proceeding entered on December 22,
     2010, the court declined to dismiss Hahn's complaint based upon an alleged lack of subject
23   matter jurisdiction and failure to state a claim.  Section 553 allows setoff of mutual debts owed
24   between a creditor and the debtor which arose before the commencement of the case.  11 U.S.C.
     § 553(a).  In dismissing Hahn's preference claim against Leong, the court necessarily found that
25   Leong was not a creditor of the debtor.  Therefore, a right to setoff under § 553 is not available as
26   a defense to Leong in this adversary proceeding.
     [44] Leong MSJ 19:27-20:21.
27
                              - 22 -

1  debtor was entered after a "regularly conducted, contested divorce proceeding" under Guam law.

2  Given the fact that Hahn's First Amended Complaint "contains no particularized allegations of

3  fraud,"[45] Leong reasons under <u>Bledsoe</u> that reasonably equivalent value was conclusively given

4  for the Transfer pursuant to the Divorce Judgment."[46]

5      In <u>Bledsoe</u>, the debtor filed a chapter 7 case in Oregon following a "hotly contested"

6  divorce in which "a substantial majority of the parties' assets" were awarded to his former

7  spouse.  The trustee filed a complaint seeking to avoid the transfer under §§ 544 and

8  548(a)(1)(B).  <u>Batlan v. Bledsoe (In re Bledsoe)</u>, 350 B.R. 513, 515 (Bankr. D. Or. 2006), <u>aff'd</u>,

9  569 F.3d 1106 (9th Cir. 2009).  The bankruptcy court granted a summary judgment in favor of

10  the former spouse and the Ninth Circuit affirmed, stating:

11      In conclusion, we hold that a state court's dissolution judgment, following a regularly
        conducted contested proceeding, conclusively establishes reasonably equivalent value' for
12      purposes of § 548, in the absence of actual fraud.

13  <u>Bledsoe</u>, 549 F.3d at 1112.

14      <u>Bledsoe</u> can be distinguished from this case on the facts.  First, the situs of the Family

15  Residence is California, not Oregon.  The Grant Deed to the Family Residence dated February

16  26, 1993, states that the subject property was conveyed to "Fernando Llamas and Edna Leong,

17  husband and wife, as community property."  California is a community property state.  Oregon is

18  not.  Second, the judgment dissolving the marriage between debtor and Leong may have been the

19  product of a "regularly conducted" proceeding under Guam law, but the divorce was not

20  contested as in <u>Bledsoe</u>.  Leong did not appear before the Guam court nor did Leong contest the

21  proceeding.  Leong consented to the terms of the divorce and to the jurisdiction of the Guam

22  court to enter the divorce in her absence.  The language of the "Interlocutory Judgment of

23  Divorce" which states "[t]he above-entitled action for uncontested divorce came on for hearing . .

24  ." belies any notion that the divorce proceeding between the debtor and Leong was contested.

25  _____

26  [45] <u>Id.</u> 7:7-8.
    [46] <u>Id.</u> 7:19-21.

27

1    The mere fact that Leong now states that she would not have agreed to a divorce absent an award

2    of the Family Residence does not, of and by itself, morph a divorce that is uncontested on its face

3    into "a regularly conducted, contested divorce proceeding."

4          Next Leong argues that "[w]hile a [marital settlement agreement] approved by a

5    dissolution court is subject to collateral attack by an allegation of fraud" in California under the

6    rationale of <u>Beverly</u> and <u>Mejia v. Reed</u>, 31 Cal.4th 657 (2003), a divorce judgment itself is not

7    and <u>Bledsoe</u> recognizes this distinction.[47] In <u>Bledsoe</u>, the Ninth Circuit rejected a trustee's

8    argument that transfers under a divorce judgment may be attacked under a constructive fraud

9    theory given the Oregon Supreme Court's decision in <u>Greeninger v. Cromwell</u>, 140 Or.App. 241,

10   915 P.2d 479, 481-82 (1996), which held specifically that Oregon's UFTA requires allegations of

11   extrinsic fraud when challenging a transfer under a regularly obtained dissolution judgment

12   following a contested proceeding. <u>Bledsoe</u>, 569 F.3d at 1110. In so holding, the Ninth Circuit

13   observed in a footnote that "[b]ecause transfers under a settlement agreement may raise different

14   issues in this context, we need not and do not decide whether <u>Greeninger</u> would apply to a

15   marital settlement agreement." <u>Id.</u> at 1110 n.2. However, <u>Beverly</u> and <u>Mejia</u> each stand for the

16   proposition that a transfer accomplished through a marital settlement agreement merged into a

17   divorce judgment under California law can be avoided as a fraudulent transfer under UFTA and

18   that the avoidance of such a transfer is not an impermissible "collateral attack" on the divorce

19   decree. <u>See Beverly</u>, 374 B.R. at 234; <u>Mehia</u>, 31 Cal.4th at 669. As stated in <u>Mejia</u>:

20       California and federal law already [permits dissolution] judgments to be set aside for
     fraud. Under **state law**, either spouse can attack the property division under a dissolution
21   judgment on the ground that it was procured by extrinsic fraud. (Fam. Code, § 2122,
     subd. (a).) Under **federal bankruptcy law**, a bankruptcy trustee, acting in the interest of
22   creditors, can set aside the property division of a dissolution judgment on the ground of
     fraud. (See <u>Britt v. Damson</u> (9th Cir.1964) 334 F.2d 896, 902; <u>In re Hope</u>,
23   (Bankr.D.Colo.1999) 231 B.R. 403, 415 & fn. 19, and cases cited.) Thus, while the law
     respects the finality of a property settlement agreement "that is not tainted by fraud or
24   compulsion or is not in violation of the confidential relationship of the parties" (<u>Adams v.
     Adams</u> (1947) 29 Cal.2d 621, 624, 177 P.2d 265), we find no legislative policy to protect

25

26   _____

     [47] <u>Id.</u> 17:20-18:14.
27
                                        - 24 -

1     such agreements from attack as instruments of fraud.

2     <u>Mejia</u>, 31 Cal.4th at 669 (emphasis added).  <u>Bledsoe</u> is not dispositive.

3                   III.  CONCLUSION

4        For the reasons stated, Leong is entitled to a summary judgment against Hahn dismissing

5 the First and Third Claims for Relief in Hahn's First Amended Complaint.  Hahn is entitled to a

6 summary judgment against Leong on the Second, Fourth and Fifth Claims for Relief set forth in

7 his First Amended Complaint avoiding the transfer of the debtor's interest in the Family

8 Residence under § 544(b) and § 548(a)(1)(B) and recovering the debtor's interest in the Family

9 Residence under § 550.

10        Separate orders and a judgment will be entered consistent with this opinion.

11 Dated: December 12, 2011

12                           PETER H. CARROLL
                           Chief Bankruptcy Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

| In re: | | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NUMBER: |

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify* __*MEMORANDUM DECISION*__ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of 12-12-2011 , the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Wesley H Avery    wamiracle6@yahoo.com
- Thomas H Casey    msilva@tomcaseylaw.com
- Kathleen M Goldberg    msilva@tomcaseylaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9021-1.1**